MR. CHIEF JUSTICE HASWELL
delivered the Opinion of the Court.
This is an appeal from an order of the District Court for the Eleventh Judicial District, Flathead County, granting a new trial to the plaintiff in a personal injury action. The plaintiff cross-appeals from the contributory negligence instructions.
The plaintiff, Marjorie Harry, is the mother of defendant Sandy Elderkin, who was the wife of defendant Bill Elderkin. During June, Í976, Mrs. Harry was visiting the Elderkins at their home in Kalispell, Montana. At the time of her visit, Bill *4 Elderkin was in the process of constructing a cabinet shop in the backyard of the Elderkin home. A trench had been dug approximately four feet deep, and cement had been poured into plywood forms constructed in the trench. A garden was located next to the cabinet shop foundation, and the remainder of the backyard was covered with black plastic and gravel.
On June 12, 1976, Sandy Elderkin invited her mother into the backyard to view the garden. Mrs. Harry had not been in the backyard since her arrival, but she was aware of the construction project. Bill Elderkin was in the process of removing braces and forms from the foundation. As Sandy Elderkin and Mrs. Harry walked along the pathway between the garden and the construction site, Sandy bent down to remove a board from the garden. Mrs. Harry took a step backwards with her right foot towards the trench, the ground gave way, and she fell into the trench and caught her left ankle on a brace. As a result of the accident, Mrs. Harry suffered a severely broken left ankle and received extensive medical treatment.
In October, 1977, Mrs. Harry was still experiencing difficulties due to severe degenerative arthritis of the ankle caused by the fracture. Dr. Laidlaw advised Mrs. Harry that she would eventually require an ankle fusion to alleviate the pain caused by the rubbing of bone upon bone in the ankle joint. In May, 1978, Dr. Laidlaw again advised Mrs. Harry that she was in need of an ankle fusion. Mrs. Harry was also seen by Dr. Maruyama, an orthopedic surgeon in Colorado, who advised her in November, 1978, and in November, 1980, that she should have an ankle fusion but that she should first lose fifty pounds. At the time of trial, Mrs. Harry was scheduled to have the ankle fusion but had not yet done so.
Mrs. Harry brought an action against the Elderkins for damages for personal injury. The District Court denied the summary judgment motions of both parties and a jury trial commenced on December 15, 1980. The jury rendered a special verdict in which it found the plaintiff to have been 85% negligent and the defendants to have been 15% negligent. The full amount of damages sustained by the plaintiff was found to be $15,000. The District Court ordered that judgment be entered on the verdict on behalf of defendants and against the *5 plaintiff.
The plaintiff moved for new trial on the grounds of irregularity in the jury proceedings, misconduct of the jury and insufficiency of the evidence to support the verdict. The motion was supported by an affidavit of the jury foreman, which stated:
“. . . (2) That at the time the Special Verdict Form was completed, Affiant and his fellow Jurors believed and they intended that Mrs. Harry was awarded a Judgment in the sum of $15,000.00;
“(3) That Affiant and his fellow Jurors assigned a percentage of 85% to Marjorie Harry as justification for the award of $15,000.00 to her; and that in determining the 85%, Affiant and his fellow Jurors believed that a significant factor, but not the only factor, was the failure of Marjorie Harry to have her ankle fused when first suggested by her physicians, and that much of her problems could have been alleviated had the fusion taken place.” By an order dated January 2, 1981, the District Court granted plaintiffs motion for a new trial and found that:
“. . . the jurors, or some of them, did not understand the doctrine of comparative negligence, did not apply the law correctly relative to contributory negligence, were inconsistent in their answers on the Special Verdict, and reached a result that they did not intend when the Court applied the proportion of contributory negligence they ascribed to the Plaintiff.”
The Elderkins contend that the District Court manifestly abused its discretion in granting Mrs. Harry a new trial. They argue that there was no irregularity in the proceedings, that the jury may not impeach its own verdict based upon a misapprehension of the law, and that there was sufficient evidence to support the giving of the contributory negligence instruction. Mrs. Harry contends she is entitled to a new trial as a matter of law due to an error in instructing the jury. She further asserts that this is a proper case for determining whether the rules of status of persons injured on real property should be abolished.
We decline to address the latter issue as we find it is not properly before us. The trial of this case occurred prior to our decision in Corrigan v. Janney (1981), Mont., 626 P.2d 838, *6 38 St. Rep. 545, in which we held that a landlord is under a duty to exercise ordinary care in the management of the premises to avoid exposing persons thereon to unreasonable risk of harm. Mrs. Harry asserts that this rule of law issued while her case was pending on appeal should be expanded and applied to her case by virtue of the plain error rule. This is not an appropriate case for application of the plain error rule enunciated in Halldorson v. Halldorson (1977), 175 Mont. 170, 573 P.2d 169. It is only when the trial court has committed an error which results in a denial of substantial justice that we can review an error not objected to at trial. Plaintiffs counsel indicated satisfaction with the instructions on the standard of liability, and he may not now argue the academic issue that the law should be changed.
Mrs. Harry’s motion for a new trial was premised upon section 25-11-102(1), (2), and (6), MCA. Although the District Court order granting a new trial does not specify the subsection upon which it is based, it is clear that the court relied upon the jury foreman’s affidavit and determined that either an irregularity in the jury proceedings or misconduct of the jury had occurred.
Juror affidavits are not permissible in support of a motion for new trial based upon an irregularity in the jury proceedings, section 25-11-102(1), MCA. Rasmussen v. Sibert (1969), 153 Mont. 286, 456 P.2d 835. Therefore, if a motion for new trial was properly granted under subsection (1), an irregularity in the jury proceedings must have existed independent of any consideration of the jury foreman’s affidavit. The District Court order makes reference to an inconsistency in the answers on the special verdict. On its face, however, the special verdict does not contain any inconsistent answers. Both parties were found to have been negligent, a total amount of damages was assessed and percentages of negligence were ascribed to each party. Absent consideration of the juror affidavit, we find no irregularity in the jury proceedings requiring a new trial under section 25-11-102(1), MCA.
Plaintiff further argues that even though juror affidavits cannot be used under section 25-11-102(1), the trial court could have found from an independent review of the evidence, *7 without considering the juror affidavit, that the result reached by the jurors was not the result intended by them. The court may on its own initiative order a new trial for any reason for which it might have granted a new trial on motion of a party. Rule 59(e), M.R.Civ.P. This does not alter the fact that, absent consideration of the juror affidavit, there was no basis for a new trial under section 25-11-102(1), MCA.
Jury misconduct as a ground for new trial may be shown by juror affidavit according to section 25-11-102(2), MCA. As jury misconduct, the respondent refers to (1) the error of the jurors in considering her failure to have an ankle fusion as negligence and (2) setting her total damages as $15,000 and assigning 85% negligence to the respondent. Montana law on the use of juror testimony and affidavits upon an inquiry into the validity of the verdict is concisely summarized by Rule 606(b), Montana Rules of Evidence as follows:
“Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury’s deliberations or to the effect of anything upon his or any other juror’s mind or emotions as influencing him to assent or dissent from the verdict or indictment or concerning his mental processes in connection therewith. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.
“However, as an exception to this subdivision, a juror may testify and an affidavit or evidence of any kind be received as to any matter or statement concerning only the following questions, whether occurring during the course of the jury’s deliberations or not: (1) whether extraneous prejudicial information was improperly brought to the jury’s attention; or (2) whether any outside influence was brought to bear upon any juror; or (3) whether any juror has been induced to assent to any general or special verdict, or finding on any question submitted to them by the court, by a resort to the determination of chance.”
The cases on the use of juror affidavits fall into two major categories: 1) those involving external influence on *8 the jury, and 2) those involving internal influence on the jury. Where external influence is exerted on the jury or where extraneous prejudicial information is brought to the jury’s attention, juror affidavits can be the basis for overturning the judgment if either party was thereby deprived of a fair trial. Schmoyer v. Bourdeau (1966), 148 Mont. 340, 420 P.2d 316 (juror telephoned a relative with regard to previous litigation by plaintiff); Goff v. Kinzle (1966), 148 Mont. 61, 417 P.2d 105 (juror visited scene of accident, conducted experiments and told jury of his findings); Clark v. Wenger (1966), 147 Mont. 521, 415 P.2d 723 (juror had received evidence outside of court which made him a witness against the plaintiff); Putro v. Baker (1966), 147 Mont. 139, 410 P.2d 717 (juror brought newspaper article into jury room and showed it to jury). On the other hand, juror affidavits may not be used to impeach the verdict based upon internal influences on the jury, such as a mistake of evidence or misapprehension of the law. Groundwater v. Wright (1979), 180 Mont. 27, 588 P.2d 1003, (jury misunderstood the law); Charlie v. Foos (1972), 160 Mont. 403, 503 P.2d 538 (jury desired to be discharged, did not understand law of contributory negligence); Rasmussen v. Sibert, supra (plaintiffs witness referred to defendant’s insurance, which was considered by the jury); Johnson v. Green (1969), 153 Mont. 251, 456 P.2d 290 (presiding judge not available to answer jury question on instructions but another judge was available).
Here, the juror affidavit reflects the foreman’s belief that the jury did not understand the instructions on contributory negligence, comparative negligence and mitigation of damages. This case falls into the category of cases involving internal influences on the jury. We hold that the District Court abused its discretion in granting a new trial on the basis of a juror affidavit which purports to impeach the verdict by delving into the thought processes of the jurors.
Nonetheless, Mrs. Harry contends that she is entitled to a new trial because 1) the instructions on contributory negligence and mitigation of damages were erroneous, and 2) there was insufficient evidence to support the giving of the contributory negligence instruction and to support the verdict that Mrs. Harry was 85% negligent.
*9 We find that the plaintiff failed to object at trial or in her motion for new trial to the substance of the instructions on contributory negligence and mitigation of damages and that the issue of erroneous instructions is not before us. We further find that the evidence was sufficient to support the giving of the instruction on contributory negligence and to support the finding that Mrs. Harry was 85% negligent. Mrs. Harry was married to a construction worker with whom she traveled around the world to various construction sites. She testified that she was aware of some of the dangers inherent in a construction site and acknowledged the danger of the ground giving way. The jury could have inferred that she knew or should have known that if she stepped too close to the trench the ground might cave in. Mrs. Harry had poor vision in her right eye. She testified that she pivoted towards the right and stepped as close as 12 inches from the edge of the trench without looking where she was stepping. The jury was instructed that all persons are required to be observant and to take such measures as are necessary to protect themselves. The evidence supported the giving of the instruction and the verdict.
The order of the District Court granting a new trial to the plaintiff is vacated. The judgment on the verdict stands.
MR. JUSTICES DALY, HARRISON and WEBER concur.