No. 92-258

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STATE OF MONTANA,

       Plaintiff and Respondent,

-v-

NEAL ALLEN HAGE,

       Defendant and Appellant.

FILED

JUN 1 - 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:   District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Mark P. Sullivan, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

      Michael Donahoe, Donahoe & Yeshe, Helena, Montana

      For Respondent:

      Joseph P. Mazurek, Attorney General, Cregg W.
Coughlin, Assistant, Helena, Montana; Robert M.
McCarthy, County Attorney, Brad Newman, Deputy,
Butte, Montana


Submitted on Briefs: February 4, 1993

Decided: June 1, 1993

Filed:

_____
Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from a Second Judicial District Court, Silver Bow County, jury verdict of the deliberate homicide of Willie Fleming. We affirm.

There are five issues on appeal:

1. Did the trial court err in informing the jury, outside of the presence of the defendant and counsel, that they would not be allowed to take notes?

2. Did the trial court err when it prohibited the defendant from cross-examining certain witnesses on their prior crimes?

3. Did the trial court err when it would not allow the defendant to introduce evidence regarding Mitch Spindler?

4. Was the evidence produced by the State of the defendant's activities on the night before the shooting improper 404(b) evidence or part of the res gestae of the crime charged?

5. Did the trial court err when it ruled that the defendant's evidence on juror misconduct was inadmissible?

On the evening of July 11, 1991 in Butte, Montana, William (Willie) Fleming went to Mitch and Cheryl Spindler's house. Willie and Mitch were having a beer when Cheryl joined them. At about 9:00 p.m., the appellant appeared at the Spindler home. Cheryl testified that the appellant told her that his father had passed away and he was angry, mad and hurt. The appellant joined Mitch and Willie for a beer and stated that he had consumed beer and various pills before his arrival at the Spindler home. At some point thereafter, the appellant showed a handgun he had in his

2

possession and was "waving it around and stuff."

Lorraine Valentine (Lorraine) and Mick Jacobson (Mick), friends of the Spindlers came to the house around 11:45 p.m. to see if Mitch and Cheryl wanted to go to a comedy show. Mick was to start a prison term the following morning for a drug related offense. The Spindlers did not accompany them to the show but Mick and Lorraine returned to the Spindler home after the show. Cheryl testified that the appellant appeared to be quite upset at Mick and was "harassing" him but Mick did not want any trouble, and attempted to leave.

Then the appellant asked the group to come to his house for a drink before Mick had to leave the next day. Cheryl and Mitch Spindler drove their car with the appellant as a passenger. Cheryl testified that during the drive to the appellant's house, the appellant stated that he was going to kill Mick and make it look like a burglary. They arrived at the appellant's house for drinks and about 15 minutes later, Lorraine and Mick arrived. Cheryl testified that she left with Mitch and Willie first at about 1:30 or 2:30 a.m., they all returned to the Spindler home and Mitch and Willie continued drinking. Cheryl also testified that the appellant called sometime after 3:00 a.m. and wanted Mick's address. She gave the telephone to Mitch. The appellant returned to the Spindler house while Willie was still there but Willie and the appellant left the house about 5:30 or 6:00 a.m.

Steve Fleming, Willie's half-brother, testified that Willie came home about 5:30 a.m. on July 12, with the appellant, and they

3

stayed at the house for approximately 15 minutes. Steve also testified that the two returned to the Fleming house at about 7:30 a.m., Willie called his boss, Tom Tucker, and the two left about 20 minutes later. Willie's sister, Billie Jo Blackburn, confirmed her brother, Steve's testimony. This was the last time Steve and Billie Jo saw Willie Fleming alive.

The appellant, however, testified that he went to the Spindler house on July 11, 1991, at about 7:00 or 7:30 p.m. for drinks. He stated that Cheryl and Mitch Spindler were there and so was Willie Fleming, who was introduced as "Jim." He further testified that Mick and Lorraine arrived about 45 minutes later. The appellant stated that he had no gun when he was in the Spindler residence but there was a gun owned by Mitch that was in view. He further testified that when the group went to his house, he showed Mitch one of his guns. At some point later, Cheryl, Mitch and Willie left the appellant's house and Mick and Lorraine left some time later. Mitch called the appellant later and suggested that he return to the Spindler house so appellant packed up some things and left.

The appellant testified that he arrived home around 3:00 a.m., cleaned the kitchen and went to bed. Later that morning, the appellant was awakened by the sound of breaking glass. He woke his wife, asked her to grab his gun and give it to him, which she did, and he got dressed. According to his testimony, he proceeded into the hall and down the stairs. As he approached the bottom of the steps, he saw broken glass and someone he thought was Willie

4

Fleming in the direction of the kitchen. He confronted Willie and asked him to put his hands on his head and turn around. He said Willie did not put his hands on his head but did turn around and shortly thereafter, he started to come toward the appellant. The appellant shot Willie in the leg and after a few seconds, Willie sat down. The appellant then asked his wife for a towel and applied it to Willie's leg. He then went to the phone to call the police, but he saw Willie coming toward him. The appellant retrieved a gun from his wife's purse in the closet and tried to get Willie to stop coming toward him. He stated that Willie backed away for a short time and then came toward him again in a position to tackle the appellant. The appellant aimed the gun at Willie and though he testified that he tried to hit him in the abdomen or his leg, he fired and hit him in the head. The appellant picked up the phone and called the police at 911.

When the police arrived, the appellant was on the telephone and his wife was also in the residence. Willie was lying inside the front door with his head toward the door. The EMTs entered next, noted a wound in the leg and one in the head and checked for pulses but found no signs of life. Lieutenant Walsh advised the appellant of his Miranda rights and he was taken to the Public Safety Building and then transported to the county jail. Trial was held from January 13 through January 17, 1992. The appellant was found guilty of deliberate homicide by a jury and sentenced to the state prison for forty years with an additional 10 years for use of a dangerous weapon. This appeal followed.

5

The scope of review for evidentiary rulings and trial administration issues by the trial court is whether the court abused its discretion. Steer Inc. v. Department of Revenue (1990), 245 Mont. 470, 475, 803 P.2d 601, 604.

### 1. Taking notes by the Jury

The appellant argues "that the Judge and/or his Clerk had ex parte contact with members of the Jury during the trial concerning the taking of notes and ruled that they could not." The appellant contends that this ex parte contact between the court and the jury was improper and was reversible error. The State counters that the majority of jurisdictions hold that the matter of note-taking is within the sound discretion of the court.

The appellant cites a Montana statute, which he argues supports an argument that "[o]nce a juror requests permission to take notes that permission should be granted and the jurors who do decided (sic) to take notes must be permitted to make use of them during deliberations." Section 46-16-504, MCA, states:

> Upon retiring for deliberation, the jurors may take with them the written jury instructions read by the court, notes of the proceedings taken by themselves, and all exhibits that have been received as evidence in the cause that in the opinion of the court will be necessary.

This statute does not concern whether a juror may take notes in the first place, but whether a juror may take the notes upon retiring to the jury room for deliberation. It is not applicable.

Case law supports the State's argument that the matter of note-taking is within the discretion of the court. In fact, "it has never been suggested that the judge must <u>permit</u> the practice;

6

the question has always been whether he must forbid it. Moreover, it is at most a matter of discretion." United States v. Campbell (N.D. Iowa, W.D. 1956), 138 F. Supp. 344, 352. The decision as to whether jury members may take notes is a matter within the discretion of the court. United States v. Murray (9th Cir. 1973), 492 F.2d 178, 193; United States v. Johnson (6th Cir. 1978), 584 F.2d 148, 157; United States v. Anthony (8th Cir. 1977), 565 F.2d 533, 536; People v. Ellinger (Colo. App. 1987), 754 P.2d 396, 397; Alaska State Housing Authority v. Contento (Alaska 1967), 432 P.2d 117, 122; Billings v. People (Colo. 1970), 466 P.2d 474, 478. The trial court did not err in prohibiting the jury from taking notes during the trial.

The appellant further contends he and his counsel should have been present when the judge told the jury they could not take notes. We conclude that the judge's comment to the jury concerning taking notes did not have a deleterious effect on the appellant's case. The judge merely told the jury they could not take notes during the trial because it might detract them from important points of the case. The judge instructed on a matter that was within his discretion. He did not remark about a fact in controversy in the case nor did he say anything to influence the jury in a certain direction. U.S. v. Madrid (9th Cir. 1988), 842 F.2d 1090, 1094-95. Madrid states "that a defendant must demonstrate 'actual prejudice' resulting from an ex parte contact to receive a new trial." Madrid at 1093. The appellant in this case provided no information in his offers of proof in conjunction

7

with post trial motions for an acquittal or a new trial that would point to any prejudice to the appellant.

In Rushen v. Spain (1983), 464 U.S. 114, 118-119, 104 S.Ct. 453, 455-56, 78 L.Ed.2d 267, 273, the court stated:

> [W]e have previously noted that the Constitution 'does not require a new trial every time a juror has been placed in a potentially compromising situation...[because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. There is scarcely a lengthy trial in which one or more jurors do not have occasion to speak to the trial judge about something, whether it relates to a matter of personal comfort or to some aspect of the trial. The lower federal courts' conclusion that an unrecorded ex parte communication between trial judge and juror can never be harmless error ignores these day-to-day realities of courtroom life and undermines society's interest in the administration of criminal justice. (Citations omitted.)

Here, the judge gave a short message to the jury about a matter within his discretion long before the jury entered deliberations. The trial court did not abuse its discretion when it informed the jury that they could not take notes, even if the parties and their counsel are not present at the time.

2. Prior Criminal Convictions of Two Witnesses

The appellant argues that the trial court abused its discretion when it would not allow him to question two witnesses about their prior criminal histories when the prosecution asked about their "legal troubles" on direct examination. The trial court ruled in both situations that further testimony about prior crimes would be irrelevant.

The State argues that Rule 609, M.R.Evid., which states that "[for] the purpose of attacking the credibility of a witness,

8

evidence that the witness has been convicted of a crime is not admissible," prohibited the appellant from inquiring further into the criminal history of the two witnesses. However, the State did inquire about the previous crimes on direct examination.

The better argument is that the determination of relevancy is a matter within the discretion of the court. "The District Court has broad discretion to determine whether or not evidence is relevant. Absent a showing that the District Court has abused its discretion, this Court will not overturn the District Court's determination of relevancy." State v. Sadowski (1991), 247 Mont. 63, 69, 805 P.2d 537, 541. The State's attorney questioned Cheryl about a recent charge for obtaining dangerous prescription drugs. The attorney elicited that the charge had been dropped from a felony to a misdemeanor and she pled guilty and was sentenced. She stated that the charge had nothing to do with her testimony at the appellant's trial. Mick testified that he had been residing at the Great Falls Pre-Release Center, having been transferred from the Montana State Prison. He was sent to prison on a conviction for felony possession of dangerous drugs with intent to sell. When the defense counsel tried to inquire further into the witness' prior criminal history, the State objected and stated that "further inquiry into that is not relevant under Rule 608 of the Rules of Procedure that has any probative value of the Defendant's truthfulness or untruthfulness." The trial court agreed and sustained the objection. See Rule 608, M.R. Evid. and Commission Comments. No offers of proof were made. We conclude that the

trial court did not abuse its discretion in ruling that evidence of other prior crimes of the two witnesses was irrelevant.

3. Introduction of Evidence Regarding Non-witness Mitch Spindler

The appellant states that granting the State's motion to exclude evidence concerning Mitch Spindler was a reversible error. The State counters that any evidence about Mitch Spindler, a non-witness was irrelevant. We agree.

Mitch Spindler was an associate of Willie Fleming, the deceased, and the appellant. He was present at the parties the night before the shooting death of Willie Fleming and would have testified had he not died before the time of trial. However, the evidence of his lifestyle and former criminal history was irrelevant to the homicide of Willie Fleming on the morning of July 12, 1991. The trial court did not abuse its discretion in excluding evidence of the non-witness Mitch Spindler.

4. Allowing the State to Use 404(b) Evidence

The appellant argues that the State promised not to put on any Rule 404(b) evidence at trial but then questioned witnesses about actions and statements of the appellant on the evening prior to the shooting death. The State argues that these actions and statements are part of the res gestae of the homicide and not "other acts" as the appellant claims.

Rule 404(b), M.R. Evid., states:

Other crimes, wrongs, acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of

10

mistake or accident.

The appellant contends that evidence of a conversation between himself and the Spindlers about the appellant shooting Mick Jacobson, evidence that the appellant was angry and upset about the death of his father and evidence that he was "brandishing" a gun during the evening was evidence of other acts and therefore, the State should have provided a "Just" notice.

Cheryl Spindler testified to the following conversation between herself, her husband and the appellant:

> As we were going up Excelsior he asked Mitch and I if we had ever witnessed a murder and we says, "No, and we never want to," and he proceeded to say that he was going to get Mick up at his house, Mick was coming up, he was going to get Mick up to his house and he said that he was going to kill him and make it look like a burglary but he didn't want any witnesses around. He wanted Mitch and I to leave when Mick got up there.

Lorraine Valentine, Mick Jacobson and Cheryl Spindler also testified that the appellant had a gun during the evening and was "waving it around, putting it in and out of the case, holding it in his hand." The State contends that the conversation above and the appellant's waving the gun around show the appellant's state of mind and as such are relevant to the crime.

We agree. As stated in State v. Riley (1982), 199 Mont. 413, 425-426, 649 P.d 1273, 1279:

> This Court has identified several kinds of evidence which may be admitted despite the fact it tends to prove crimes other than those charged. See State v. Meidinger (1972), 160 Mont. 310, 321, 502 P.2d 58, 65, wherein this Court allowed evidence of crimes committed in preparation for the charged offense as part of res gestae. In addition, in State v. Frates (1972), 160 Mont. 431, 437, 503 P.2d 47, 50, we allowed evidence of prior drug sales between the defendant and the police informant as "part of the

11

<u>corpus delicti</u> of the crime...charged." In a series of recent cases, the Court held that evidence of crimes which is inextricably or inseparably linked with the crime charged may be admitted without regard to the rules governing "other crimes" evidence.

The common thread tying these cases together is the fact that the State is entitled to present the entire <u>corpus delicti</u> of the charged offense including matters closely related to the offense and explanatory of it, even when such evidence discloses crimes other than those charged. (Citations omitted.)

"This rule overrides the requirements of <u>Just</u>." State v. Gillham (1983), 206 Mont. 169, 178, 670 P.2d 544, 549. We conclude that the appellant's statements and actions are relevant to his state of mind and actions in the early morning of July 12, 1991. The trial court did not abuse its discretion in allowing this evidence to come in because it was relevant to the appellant's state of mind and the crime charged.

### 5. Juror Misconduct

The appellant argues "that a new trial was necessary because of jury misconduct." Specifically, the appellant complains that:

1. The jurors conducted an experiment in which some jurors "acted out" the possibility that the decedent was trying to get away at the time he was shot.
2. A juror felt pressured by other jurors to decide the case.
3. A juror informed the other jurors that he had personal knowledge that a telephone log was kept of all telephone calls made from the jail.
4. The jury used a "blow up of a detective's crime scene sketch."
5. Some of the jurors had to intermingle with spectators during breaks of the trial.

The trial court concluded that the allegations of juror misconduct did not fall within the Xexceptionsof Rule 606(b), M.R. Evid., and therefore granted the State's motions to strike the single juror's affidavit the appellant sought to introduce and to

12

quash the subpoenas issued to jurors who had been interviewed by the defense investigator. As to the appellant's allegations of juror misconduct, the trial court stated:

> All I can do is consider that you're talking about the frame of mind of the jurors during their deliberations and whether they were influenced by any of the activities during the course of the trial. Again, that's covered by the Rule 606(b), you're not allowed do to (sic) that. And so that motion is denied. All on the basis of the application of the Rule 606(b).

We agree with the trial court's rulings that under Rule 606(b), M.R. Evid., these are not matters that fall within the rule's exceptions and are therefore not matters about which the court can inquire. Rule 606(b), M.R. Evid., states that:

> Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.
>
> However, as an exception to this subdivision, a juror may testify and an affidavit or evidence of any kind be received as to any matter or statement concerning only the following questions, whether occurring during the course of the jury's deliberations or not: (1) whether extraneous prejudicial information was improperly brought to the jury's attention; or (2) whether any outside influence was brought to bear upon any juror; or (3) whether any juror has been induced to assent to any general or special verdict, or finding on any question submitted to them by the court, by a resort to the determination of chance.

The five matters complained of by the appellant do not fall within the three exceptions to Rule 606(b), M.R. Evid. They are

13

associated with either the mental processes of the jurors or come within the knowledge and experience they bring with them to the jury room. Harry v. Elderkin (1981), 196 Mont. 1, 7-8, 637 P.2d 809, 813, is instructive concerning whether jury affidavits may be used to impeach a jury verdict. Harry states:

> The cases on the use of juror affidavits fall into two major categories: 1) those involving external influence on the jury and 2) those involving internal influence on the jury. Where external influence is exerted on the jury or where extraneous prejudicial information is brought to the jury's attention, juror affidavits can be the basis for overturning the judgment if either party was thereby deprived of a fair trial. On the other hand, juror affidavits may not be used to impeach the verdict based upon internal influences on the jury, such as a mistake of evidence or misapprehension of the law. (Citations omitted.)

Harry, 637 P.2d at 813. In the present case, the appellant's complaints fall within internal influences and therefore, cannot be used to impeach the jury verdict. The jury's use of demonstrative evidence and experimentation with the evidence are not external influences but part of the mental processes of the jurors during deliberation. State v. DeMers (1988), 234 Mont. 273, 277-278, 762 P.2d 860, 863. Pressure by other jurors also does not qualify as an exception to Rule 606(b), M.R. Evid. "A juror's physical, mental, and emotional condition is inherent in the verdict, and the effect of such a condition on a juror's vote is within the prohibition of Rule 606(b)." DeMers, 762 P.2d at 863. Additionally, knowledge and information shared from one juror to another or others is not an extraneous influence. "Jurors are expected to bring to the courtroom their own knowledge and

14

experience to aid in the resolution of a case. . . . For the juror to have considered the credibility of defendant's expert witness within the parameters of his own experience and background is insufficient to qualify as an exception to Rule 606(b)." DeMers, 762 P.2d at 863.

Finally, although the appellant states that the jurors were subjected to the "heavy atmosphere" of the trial and some jurors used a restroom that was also used by spectators at the trial, some of whom were the decedent's relatives and friends, the appellant can point to no specific instance where the jurors were bothered or influenced by any of the spectators.

In conclusion, the trial court did not abuse its discretion when it ruled that defense counsel could not impeach the jury verdict through affidavits and testimony because there were no external prejudicial influences on the jury.

AFFIRMED.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

15

June 1, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Michael Donahoe
Donahoe & Yeshe
P.O. Box 413
Helena, MT  59624

Hon. Joseph P. Mazurek, Attorney General
Cregg W. Coughlin, Assistant
Justice Bldg.
Helena, MT  59620

Robert M. McCarthy, County Attorney
Brad Newman, Deputy
Butte-Silver Bow County Courthouse
Butte, MT   59701

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy