No. 98-447

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 376N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

MICHAEL HUNTER,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Ronald L. Bissell, Great Falls, Montana

For Respondent:

Joseph P. Mazurek, Montana Attorney General, Jennifer Anders, Assistant Montana Attorney General, Helena, Montana; Brant S. Light, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs: August 3, 2000
Decided: December 28, 2000

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Michael Hunter was convicted by a jury in the District Court for the Eighth Judicial District, Cascade County, of deliberate homicide. The court sentenced Hunter to 65 years in prison, with an additional 10 year sentence for committing a crime with a dangerous weapon. Hunter appeals. We affirm.

¶3 Hunter raises three issues on appeal. We restate them as follows:

¶4 1. Whether an expert's testimony was properly excluded under § 46-14-213(2), MCA, because it went to the ultimate issue of the appellant's mental state at the time of the offense.

¶5 2. Whether the District Court erred in refusing the defendant's proposed jury instruction regarding voluntary intoxication.

¶6 3. Whether the District Court abused its discretion in denying the defendant's motion for a new trial based on a juror affidavit.

Factual and Procedural History

¶7 Michael Hunter was convicted by a jury of deliberate homicide for the shooting death of Gene Unger in July of 1997. Hunter shot Unger in the head with a rifle following an altercation in Unger's apartment. He was arrested on July 7, charged with deliberate homicide on July 25, and a jury trial was held on December 2, 1997. He was given a sentence of 65 years for the deliberate homicide conviction, with an additional sentence of 10 years for the use of a weapon.

¶8 Hunter and his wife Valerie lived with their three children in an apartment in Great Falls. Dennis Bowman and Gene Unger lived in an apartment nearby. The evidence shows that Hunter had been drinking heavily that day, consuming approximately four quarts of Colt 45 Malt Liquor. Around midnight Hunter was invited to Bowman and Unger's apartment for another beer.

¶9 During the visit, Hunter and Gene Unger had an argument. Unger pushed Hunter to the floor and then told him to leave. The testimony concerning what was said in the altercation is conflicting, with Hunter testifying that Gene had threatened his family and had also choked and hit him. However, neither of the witnesses to the argument heard the threat, and Bowman, who was present throughout, did not see Unger hit Hunter.

¶10 Following the altercation, Hunter went to his apartment, retrieved and loaded a rifle and stood outside the window of Bowman and Unger's apartment. He fatally shot Unger in the head and returned to his apartment.

¶11 When the police arrived, Hunter was inside his apartment with his wife and three children. The police made several phone calls to the apartment in an attempt to try to get Michael's wife and children safely out of the apartment. Eventually the family exited the apartment safely and Hunter was taken into custody.

¶12 Following an interview with police, approximately four hours after the shooting incident, Hunter's blood was drawn at the hospital. Lab reports showed that Hunter's blood alcohol content was .19 grams of ethanol alcohol per 100 milliliters of blood.

¶13 Prior to trial, psychological evaluations were done on Hunter by three different doctors. Expert testimony was presented by both the defense and prosecution regarding Hunter's history of alcohol use, other substance abuse, and indications of other disorders, including post-traumatic stress disorder, Tourette's syndrome, intermittent explosive disorder, attention deficit disorder, and Hunter's past head injuries. None of the experts

concluded that Hunter suffered from a mental disease or defect.

¶14 Prior to trial, the State filed a Motion in Limine to prohibit the expert witnesses from testifying or introducing any evidence regarding, among other things, an opinion as to the ultimate issue of whether the defendant did or did not have a particular state of mind at the time of the crime. The defense did not file a responsive brief. Following a hearing, the District Court granted the State's motion.

¶15 At trial the defense expert, Dr. Stratford, testified about his evaluation of the defendant and his diagnoses but did not offer an opinion on Hunter's mental state at the time of the offense.

¶16 The jury unanimously found Hunter guilty of deliberate homicide. He was given a sentence of 65 years for the deliberate homicide conviction, with an additional sentence of 10 years for the use of a weapon.

¶17 Other facts will be set forth as necessary.

## Discussion

### Issue 1

¶18 Whether an expert's testimony was properly excluded under § 46-14-213(2), MCA, because it went to the ultimate issue of the appellant's mental state at the time of the offense.

¶19 The appellant argues that because of Hunter's complicated mental history Dr. Stratford should have been able to give his opinion on Hunter's reduced capacity to act with purpose or knowledge at the time of the crime. He argues that since mental disease or defect was not an issue, there was no prohibition in statute or case law against an expert testifying to the ultimate issue in this case. He further argues that if the expert testimony is not allowed under Montana law, Hunter was denied a right to fair trial because his counsel should have raised the mental disease or defect defense. Finally, he argues that if the prohibition on expert testimony applies in this case, the statute prohibiting expert testimony is a denial of due process. We find none of these arguments to be persuasive.

¶20 This Court reviews a district court's evidentiary rulings for abuse of discretion. The trial court has broad discretion in determining whether evidence is relevant and

admissible, and absent a showing of abuse of discretion, this Court will not overturn the trial court's rulings. State v. Gollehon (1993), 262 Mont. 293, 301, 864 P.2d 1257, 1263.

¶21 Hunter argues that expert testimony reaching the ultimate issue is allowed under the Montana Rules of Evidence. Hunter further argues that the prohibition on expert testimony reaching the ultimate issue found in § 46-14-213(2),MCA, is not applicable when the defense is not presenting a mental disease or defect defense.

¶22 Rule 704, M.R.Evid., provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Rule 704, however, is not intended to allow all opinions, and would exclude those which would merely tell the jury what result to reach. State v. Smith, 1998 MT 257, ¶ 8, 291 Mont. 236, ¶8, 967 P.2d 424, ¶ 8. A trial court may exclude ultimate issue testimony when it is not helpful to the trier of fact, or under the rules governing exclusion of relevant evidence on grounds of prejudice. *Smith*, ¶ 8.

¶23 Section 46-14-213(2), MCA, provides:

> When a psychiatrist or licensed clinical psychologist who has examined the defendant testifies concerning the defendant's mental condition, the psychiatrist or licensed clinical psychologist may make a statement as to the nature of the examination and the medical or psychological diagnosis of the mental condition of the defendant. The expert may make any explanation reasonably serving to clarify the expert's examination and diagnosis, and the expert may be cross-examined as to any matter bearing on the expert's competency or credibility or the validity of the expert's examination or medical or psychological diagnosis. A psychiatrist or licensed clinical psychologist may not offer an opinion to the jury on the ultimate issue of whether the defendant did or did not have a particular state of mind that is an element of the offense charged.

¶24 In State v. Santos (1995), 273 Mont. 125, 902 P.2d 510, this Court interpreted this provision, determining that the statute prohibits expert opinions on the ultimate issue of whether the defendant actually possessed the mental state at the time an offense was committed. This Court specifically stated:

> The statute contains an additional statement expressly barring an expert opinion before a jury on the ultimate issue of the defendant's mental state or mental

capacity. . . We decline to read into § 46-14-213(2) a prohibition on testimony by expert witnesses concerning a criminal defendant's mental capacity. Questions and expert opinions are not prohibited under the above statute; what the statute prohibits are expert opinions on the ultimate issue of whether the defendant actually possessed the requisite mental state at the time the offense was committed. *Santos*, 273 Mont. at 135, 902 P.2d at 516.

Expert testimony embracing the ultimate issue regarding mental state is clearly prohibited by this statute when the defendant is presenting a mental disease or defect defense. Hunter argues that this expert testimony should be allowed where there is no advancement of a mental disease or defect defense. We disagree. A defendant who has not been diagnosed with a mental disease or defect is not entitled to more protection than one who has been diagnosed and is using it as a defense. The statute prohibits expert testimony going to the ultimate issue of whether the defendant actually possessed the requisite mental state at the time the offense was committed.

¶25 The appellant's ancillary argument is that if the statutory prohibition applies, then counsel was ineffective for failing to raise mental disease or defect as a defense. This assertion is unfounded. Both the State's expert and the appellant's expert agreed that Hunter did not suffer from a mental disease or defect. Defense counsel cannot be considered ineffective for failing to raise a mental disease or defect defense where there is no factual basis.

¶26 The appellant further argues that he was denied a right to fair trial because the issues relating to extreme emotional or mental distress are too complicated for the jury to evaluate without the benefit of expert testimony. He argues that due process requires that the defendant be allowed to present expert opinion on the ultimate state of mind. We disagree. Expert testimony was given at trial regarding Hunter's psychological history and how it may have affected his mental state at the time of the offense. The jury was allowed to consider this testimony in its deliberations.

¶27 The District Court did not err in granting the State's motion to exclude expert opinion as to the ultimate issue of whether the defendant did or did not have the requisite mental state at the time the offense was committed.

## Issue 2

¶28 Whether the District court erred in refusing the defendant's proposed instruction regarding voluntary intoxication.

¶29 The standard of review of jury instructions in criminal cases is whether the instructions, as a whole, fully, and fairly instruct the jury on the law applicable to the case. State v. Johnson, 1998 MT 289, ¶ 28, 291 Mont. 501, ¶ 28, 969 P.2d 925, ¶ 28. Additionally, we recognize that a district court has broad discretion when it instructs the jury. State v. Weaver, 1998 MT 167, ¶ 28, 290 Mont. 58, ¶ 28, 964 P.2d 713, ¶ 28.

¶30 Hunter argues that the District Court erred in not allowing the jury to consider alcohol use. The defense offered a jury instruction at the close of trial that would have allowed the jury to consider intoxication "along with other factors in determining the existence of a mental state." The trial court rejected this instruction in favor of the State's proposed instruction which used the language of the current statute which precludes consideration of intoxication in determining mental state.

¶31 The appellant argues that the statutory prohibition from using voluntary intoxication as a defense does not apply in this case. He argues that the jury should have been allowed to consider his alcohol use as a factor in considering whether the defendant suffered from "extreme mental or emotional distress." Hunter argues that the District Court's interpretation of the statute was overly broad and that the jury should have been allowed to consider all factors, including alcohol, in determining whether Hunter met the legal definition of mitigated deliberate homicide.

¶32 The jury instruction proposed by the defense, however, does not refer to "alcohol use short of intoxication," as the appellant presents it. The jury instruction offered by the defense at the close of trial is as follows:

> A person who is in an intoxicated condition is criminally responsible for his conduct and an intoxicated condition is not a defense to any offense.
>
> However, intoxication may be taken into consideration along with other factors in determining the existence of a mental state which is an element of the offense.

This jury instruction provided by the defense at trial, notwithstanding the appellant's arguments to the contrary, would have served to instruct the jury to consider the defendant's intoxication in determining mental state.

¶33 The Montana Legislature has determined that voluntary intoxication cannot be considered in determining the mental state of a defendant. The statute in question, § 45-2-203, MCA provides:

> A person who is in an intoxicated condition is criminally responsible for his conduct and an intoxicated condition is not a defense to any offense and may not be taken into consideration in determining the existence of a mental state which is an element of the offense unless the defendant proves that he did not know that it was an intoxicating substance when he consumed, smoked, sniffed, injected, or otherwise ingested the substance causing the condition.

It is not enough to say that the defendant in this case had other mitigating circumstances that should have been considered in combination with his alcohol use. The appellant tries to change the nature of his argument by claiming that alcohol use should not be equated with intoxication. Hunter claims that the defense should have been allowed to present an alternative theory, that alcohol may have caused an effect short of intoxication and the jury should have been able to consider alcohol use in combination with other factors in determining the mental state. This, he claims, resulted in a denial of his right to a fair trial by an informed jury.

¶34 His argument is simply an exercise in semantics, and is not persuasive. If Hunter was intoxicated, it is not a defense under the statutory scheme. On the other hand, if he was not impaired or intoxicated by his alcohol consumption, there is no reason for the jury to consider his alcohol use in determining state of mind.

¶35 More importantly, the jury instruction presented at the time of trial did not reflect this alternative theory. The jury instruction presented clearly states that "intoxication" should be considered in combination with other factors, not "alcohol use short of intoxication" as the defense presents on appeal. The District Court, in declining to allow the jury to consider Hunter's intoxication, was following the law as it was presented by the legislature.

¶36 Section 45-2-203, MCA, amounts to a legislative prohibition on the use of voluntary intoxication, which includes the voluntary use of alcohol, as a factor in any crime. Ultimately the legislature has determined that the courts must view the intoxicated defendant the same as one who is sober. The appellant's argument that somehow there is an exception to this rule when there may be other mitigating factors is unavailing. The jury

was presented evidence on Hunter's possible head injury and his psychological history and was allowed to consider those factors in its deliberations. The jury, however, still determined that Hunter's crime met the definition of deliberate homicide.

¶37 The jury instruction offered by the defense would not have fully and fairly instructed the jury on the law applicable to this case. We hold that the District Court did not err in disallowing the jury instruction that would have allowed the jury to consider Hunter's intoxication.

## Issue 3

¶38 Whether the District Court abused its discretion in denying the defendant's motion for a new trial based on a juror affidavit.

¶39 New trial motions in criminal cases are governed by § 46-16-702, MCA, pursuant to which a district court may grant a new trial "if required in the interest of justice." The grant or denial of a motion for a new trial is within the discretion of the trial court and its decision will be affirmed absent an abuse of that discretion. State v. Brogan (1995), 272 Mont. 156, 160, 900 P.2d 284, 286.

¶40 The appellant argues that he should be granted a new trial because of intimidation that went on in the jury room. He argues that one of the jurors was "pressured into agreeing to a verdict that violated his conscience." In support of this argument, Hunter has attached a transcript of an interview with that juror to his brief. The transcript of the interview shows that this juror revealed that he would have convicted Hunter of mitigated deliberate homicide rather than deliberate homicide but that he felt pressured to vote for the deliberate homicide by other members of the jury in order to avoid a mistrial.

¶41 The District Court denied the defense's motion for a new trial and ordered that the juror testimony be stricken from the record.

¶42 With his brief, the appellant submitted a transcript of an interview with one of the jurors from the trial. In that interview, the juror claimed that he was intimidated and threatened by the other jurors. He later alleged that he felt that the lesser offense of mitigated deliberate homicide was more appropriate but that he was told by other jurors that it would result in a mistrial.

¶43 Rule 606(b), M.R.Evid., provides that a juror may not testify as to what occurred

during jury deliberations except when the information pertains to (1) whether extraneous prejudicial information was improperly brought to the jury's attention; (2) whether any outside influence was brought to bear on any juror, or (3) whether any juror was induced to assent to any verdict or finding by resort to the determination of chance.

¶44 It has long since been established in Montana that juror affidavits may not be used to impeach the verdict based upon internal influences on the jury. Harry v. Elderkin (1981), 196 Mont 1, 7-8, 637 P.2d 809, 813. The reasoning behind this rule is clear:

> If jurors were permitted to impeach their own verdicts the door would be thrown wide open to corrupt practices. After their discharge the jurors would be subjected to all sorts of tampering influences to induce them to repent of their decision and endeavor to change or revoke it by making affidavit to real or trumped-up irregularities. Thus there would be no assurance that any verdict, however just, would be final. State v. Gies (1926), 77 Mont. 62, 64, 249 P. 573, 574.

Allowing the defense to use an affidavit by a juror to impeach a verdict would undermine the integrity of the jury system.

¶45 Juror impeachment is governed by the Montana Rules of Evidence. Rule 606(b) M.R. Evid., provides:

> Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

> However, as an exception to this subdivision, a juror may testify and an affidavit or evidence of any kind be received as to any matter or statement concerning only the following questions, whether occurring during the course of the jury's deliberations or not: (1) whether extraneous prejudicial information was improperly brought to the jury's attention; or (2) whether any outside influence was brought to bear upon any juror; or (3) whether any juror has been induced to assent to any general or

special verdict, or finding on any question submitted to them by the court, by a resort to the determination of chance.

¶46 *Harry* explains that evidence of external influence exerted on the jury or extraneous prejudicial information brought to the attention of the jury can be the basis for overturning a judgment where a party was deprived of a fair trial. *Harry*, 196 Mont. at 8, 637 P.2d at 813. However, juror affidavits based on internal influences may not be used to impeach the verdict. *Harry*, 196 Mont. at 8, 637 P.2d at 813.

¶47 The appellant complains that the juror was intimidated by the other jurors during the deliberations. The juror was allegedly threatened with sanctions by the court if he caused a mistrial. The activities complained of by the appellant do not fall within the exceptions of Rule 606(b), M.R.Evid. This Court has specifically stated that "Pressure by other jurors . . . does not qualify as an exception to Rule 606(b) M.R.Evid." State v. Hage (1993), 258 Mont 498, 508, 853 P.2d 1251, 1257.

¶48 We find that the District Court did not err in striking the juror testimony from the record.

¶49 The judgment of the District Court is affirmed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART