STATE, Respondent, *v.* JACKSON, Appellant.

(No. 6,696.)

(Submitted November 7, 1930. Decided November 26, 1930.)

[293 Pac. 309.]

422

*Mr. Lester H. Loble, Mr. Hugh R. Adair* and *Mr. W. J. Burke,* for Appellant, submitted an original and a reply brief; *Mr. Adair* argued the cause orally.

424

*Mr. L. A. Foot,* Attorney General, and *Mr. C. N. Davidson,* Assistant Attorney General, for the State, submitted a brief; *Mr. Davidson* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an appeal by defendant from a judgment of conviction entered upon the verdict of a jury and from an order denying a new trial.

1. At the outset counsel for defendant challenge the sufficiency of the information upon a number of grounds. It charges that defendant wilfully, wrongfully, feloniously, knowingly and falsely stated as true that he saw Martin Ernst on Tuesday, the eighteenth day of June, 1929, at about the hour of 11 o'clock, at the home of defendant at Broadwater near Helena, Montana; that when defendant returned from a shopping trip in Helena to his home on June 18, 1929, at about 11 o'clock, Martin Ernst was there and was fixing a Haynes Sixty car belonging to defendant, ''and that the said Martin Ernst was fixing the timer on said car, and was timing said car, and fixing the carburetor''; that Ernst ate dinner at the house of defendant on the eighteenth day of June, 1929, with defendant, Mrs. Eugene Joseph Jackson and Riley Bright, and that Ernst ''left there after dinner about 12:30 o'clock on said day.'' It was then alleged that all of said statements were false and he (the said defendant) ''then and there knowingly at the time he was making said statements that they were false and that he was stating as the truth, matters and things which he knew to be wilful, false and untrue. * * * '' It is alleged that he made the statements while testifying in open court, under oath, while then

and there testifying in the case of *State of Montana, Plaintiff,* v. *Martin Ernst, Defendant,* and so forth.

The principal attack upon the information is that it is wanting in substance because it does not say whether "11 o'clock" was in the morning or at night. Any person of ordinary intelligence reading this information can have no doubt of what is intended: Ernst was at defendant's home at 11 o'clock in the morning on June 18, 1929; he ate the noon meal with defendant, Mrs. Jackson and Riley Bright; left defendant's home "after dinner about 12:30 o'clock on said day." "Said day" means June 18, 1929; 12:30 o'clock following 11 o'clock either refers to 12:30 A. M. or 12:30 P. M. In the sequence of events 12:30 meant the afternoon of June 18 or the morning of June 19. But in the light of the context it could not mean June 19. The word "knowingly" in the sentence "then and there knowingly at the time" should be "knowing."

The information might have been amended to make more definite the time by saying "at the hour of 11 o'clock, meaning 11 o'clock in the morning"; and the word "knowing" might well have been substituted for "knowingly." Other criticisms of the information are hypercritical.

"In an indictment or information for perjury, or subornation of perjury, it is sufficient to set forth the substance of the controversy or matter in respect to which the offense was committed, and in what court and before whom the oath alleged to be false was taken, and that the court, or person before whom it was taken, had authority to administer it, with proper allegations of the falsity of the matter on which the perjury is assigned. * * * " (Sec. 11859, Rev. Codes 1921.)

Section 11843, Id., prescribes that an information must contain "a statement of the facts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." While clumsily drawn, the information fulfills the requirements of these sections. (See *State* v. *Griebel,* 65 Mont. 390, 211 Pac. 331.)

2. Defendant was arraigned upon this information on January 8, 1930, being then represented by counsel. At that time defendant waived the reading of the information, received a copy thereof, waived the statutory time in which to plead, and entered a plea of not guilty. When the case came on for trial, March 13, 1930, counsel for defendant asked leave to withdraw the plea of not guilty and to interpose a demurrer to the information. The court said: "This defendant was arraigned on the 8th of January; that is more than two months ago. You have had all the time in which to consider this matter and I believe it would be my duty at this time to deny your application to withdraw the plea. Let the record show that the application to withdraw the plea and interpose a demurrer is denied." We approve the court's action unreservedly.

3. The state offered in evidence the judgment-roll in the case of *State of Montana* v. *Martin Ernst*. Counsel for defendant objected upon the ground that it appeared that the clerk in making up the judgment-roll in the *Ernst Case* had included therein papers which did not belong there. Some of these were then abstracted by the clerk, and the judgment-roll was offered again. It still contained papers not properly a part of the judgment-roll in a criminal action, but the court admitted it. This was an irregularity, but it did not prejudice the defendant in any degree. The judgment-roll in a criminal action consists of the following papers: "1. The indictment or information, and a copy of the minutes of the plea or demurrer. 2. A copy of the minutes of the trial. 3. The charges given or refused, and the indorsements thereon. 4. A copy of the judgment." (Sec. 12074, Rev. Codes 1921.) Prior to the next trial the clerk should make up the judgment-roll agreeably to this statute.

4. It is urged that the court should have sustained defendant's motion for a directed verdict at the close of the state's case in chief in view of section 10505, Revised Codes 1921, which prescribes: "The direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact,

except perjury and treason." The argument in defendant's behalf is based upon the ground that the state's case rests upon the testimony of one witness only, Martin Ernst. In the first place it is said he was not entitled to "full credit," being a convict. Whether he was or was not entitled to full credit under the circumstances was for the determination of the jury.

Perjury may be proved by the testimony of two witnesses, or one witness and corroborating circumstances. (Sec. 10608, Rev. Codes 1921.) This court had declared that to be the law before 1895, when section 10608 was enacted as part of the Codes. (Sec. 3271, Code Civ. Proc. 1895. See *State* v. *Gibbs,* 10 Mont. 213, 10 L. R. A. 749, 25 Pac. 289.)

But if it were to be conceded that the testimony of Ernst, ▉ the state's principal witness, was insufficiently corroborated on vital points, the defendant supplied the deficiency when he took the stand, and he is not now in a position to say the evidence against him is not sufficient for want of corroboration. (*State* v. *Cobb,* 76 Mont. 89, 245 Pac. 265; *State* v. *Miller,* 24 W. Va. 802.) When a defendant supplies the deficiencies in the state's proof, he will not be heard to say the state's case against him is not sufficient. The court ▉ is not interested in the source from which competent testimony comes. The question before court and jury is, Is the testimony, taken in its entirety, sufficient to prove the defendant guilty beyond a reasonable doubt of the crime charged?

5. After the close of all the evidence the court settled the instructions. The defendant requested the court to give a number, some of which the court gave and some of which it refused to give. No exception was taken as to any of the instructions given.

As No. 2 the court gave the statutory definition of perjury ▉ (sec. 10878, Rev. Codes 1921): "Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which an oath may by law be administered, wilfully and contrary to such oath, states as true any

material matter which he knows to be false, is guilty of perjury.''

No. 4 is section 10887: ''An unqualified statement of that which one does not know to be true is equivalent to a statement of that which one knows to be false.''

Instruction No. 7, given at the request of the defendant, told the jury ''that, the charge being perjury, the issue is whether the defendant knowingly or wilfully made a false answer in a matter and in a manner that constituted a violation of the law. If the answer was in fact untrue, in the sense of being incorrect, but was made by him in good faith and in the belief of its truth, he cannot be convicted of the charge in this information.''

The jury retired about 6 o'clock in the evening and about three and a half hours later returned into court for information. The county attorney and counsel for defendant were present, but the defendant was not. The jury through its foreman asked in writing this question: ''Is there a conflict between instruction No. 4 and No. 7? Please explain why there is no conflict between these two instructions.'' The court answered orally as follows: ''Instruction No. 7 is refused and withdrawn, that is, I have taken out instruction No. 7 and it is refused as an instruction in this case and is withdrawn from your consideration, gentlemen.'' A juror: ''Your Honor, may we hear that instruction as we don't remember it?'' The court: ''Well, no, I have withdrawn it so it is not before you at all for your consideration. You are further instructed, gentlemen, that you are to banish from your minds any consideration of instruction No. 7. If you have forgotten the instruction you shouldn't even try to recall it for it is not in the instructions at all and shouldn't be considered in any way by you and should be wholly withdrawn from your consideration in this case.'' After counsel for defendant had noted their exceptions to the action of the court in withdrawing the instruction from the consideration of the jury, the court directed that body to retire for further deliberation. This was prejudicial error.

The court evidently was of the opinion that instructions 4 and 7 were in conflict. But upon analysis it is seen that they are not. As we have seen, instruction No. 4 is section 10887 of the Code. Standing alone this statute does not include the intent which is made an element of the crime of perjury through the use of the words "wilful" and "knowingly." (2 Wharton's Criminal Law, 11th ed., p. 1674; 1 Brill, Cyc. Criminal Law, p. 318; 21 R. C. L. 269.) A witness may make an unqualified statement of that which he does not know to be true, honestly thinking when he makes it that he does know what he says is true, but which in fact is not true. A witness may make a statement which, in good faith he thinks, and which he asserts positively, is true, but which later appears to be untrue. Every experienced lawyer has seen this happen time and again, and has seen the witness, sometimes with much visible embarrassment, take the stand to correct his testimony, explaining that he had been mistaken. (See *In re McCue,* 80 Mont. 537, 261 Pac. 341.)

The crime of perjury consists not merely in swearing to some material statement which is not true, but in wilfully, intentionally and corruptly falsifying under oath. (*State* v. *Loos,* 145 Iowa, 170, 123 N. W. 962; and see Wharton on Criminal Law, 11th ed., sec. 1514.)

We borrowed section 10887, as well as section 10878, from California, these sections being 125 and 118 of the Penal Code of that state. Interpreting the meaning and effect of section 125, the supreme court in *People* v. *Von Tiedeman,* 120 Cal. 128, 52 Pac. 155, 157, said: "Section 125 does not, in itself, define the crime of perjury, but is merely supplemental to the provisions of section 118, and is to be read in connection therewith, in order to determine whether the acts therein specified constitute perjury. The legislature only intended by this section to declare that when one makes an unqualified statement of a fact as true which he does not know to be true, under circumstances in which a statement by him of a fact as true which he knows to be false would constitute perjury, such unqualified state-

ment will itself constitute perjury. * * * Section 125 of the Penal Code is designed to include those cases where a witness testifies to matters when he knows that he has no knowledge upon the matters as to which he gives testimony; or, as put by some law writers, he testifies to matters of which he knows himself to be ignorant. The criminality in such cases is found in the fact that the witness absolutely knows when giving his testimony that he does not know anything about the matter to which he is testifying. His knowledge of this fact makes his testimony false and corrupt, and the law declares him guilty of the crime of perjury." (And see *People* v. *Follette,* 74 Cal. App. 178, 240 Pac. 502.)

The attorney general argues that the jury was sufficiently instructed without instruction No. 7; that instruction No. 4, taken in connection with instruction No. 2, covers the point. But, seemingly, the meaning and application of section 10887 is somewhat abstruse; therefore, it is advisable to clarify it when it is employed in the court's charge to the jury. The duty of reconciling sections 10878 and 10887 rests upon the court, and should not be passed on to the jury without explanation. To be sure, if no request for a supplementary instruction is made by defendant, he cannot assign error for want of it but, when one is requested, it should be given. (See sec. 11969.) Instruction No. 4 states an abstract rule of law, and its use without qualification furnishes ground for the assertion, sometimes made, that abstract rules of law should not be given to a jury. (*Surman* v. *Cruse,* 57 Mont. 253, 187 Pac. 890; *Keller* v. *Flanagan,* 66 Mont. 144, 213 Pac. 222.) However, "it is not error to state correctly an abstract proposition of law, in the absence of any request that it be explained or enlarged upon." (1 Randall's Instructions, sec. 122.)

Instruction No. 7 was supplemental to No. 4 and in a measure explanatory of it. No. 7 bore vitally upon the question of defendant's intent, and, consequently, upon his guilt or innocence. This instruction is in the language of a portion of the charge to the jury in *State* v. *Dryden,* 3 Boyce (26 Del.), 466, 84 Atl. 1037, and, while we think the antithetical

statement also given in that case betters the instruction, it was proper to give the instruction as offered by the defendant as the court did. But if the court had come to the conclusion that the instruction was erroneous, it should not have been withdrawn in the manner pursued.

As it was apparent that the jury was laboring in confusion over the vital question whether the defendant wilfully and knowingly made the false statement, the court should have taken pains to explain away the difficulty. The judge should have invited respective counsel into his chambers and there, without the hearing of the jury, have prepared an instruction explaining the matter, or have substituted an instruction covering both instructions Nos. 4 and 7.

6. The court seems to have been of the opinion that in withdrawing instruction No. 7 it was not further instructing the jury, but with this, under the circumstances, we cannot agree. As was said in *Roberts* v. *State*, 111 Ind. 340, 12 N. E. 500: ''To withdraw a charge given, and instruct the jury that it is not the law, and should be disregarded by them, is as much an instruction as the giving of the charge in the first place.'' (See Black's Law Dictionary, 2d ed., p. 640, defining ''Instructions.'')

It is notable that in this case the court, upon the withdrawal of instruction No. 7, said: ''You are further instructed, gentlemen, that you are to banish from your minds any consideration of instruction No. 7.'' When the court instructs the jury ''on any matter of law without first reducing the matter to writing and then reading it to the jury, reversible error is committed. (*State* v. *Fisher*, 23 Mont. 540, 59 Pac. 919.)'' (*State* v. *Duncan*, 82 Mont. 170, 266 Pac. 400, 403.)

7. It is argued that the court erred also in proceeding in the absence of the defendant. Section 12012, Revised Codes 1921, provides: ''After the jury have retired for deliberation if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the cause, they must require the officer to conduct them into court. Upon being brought into court, the information re-

quired must be given in the presence of the county attorney and the defendant and his counsel." In *State* v. *Fisher,* supra, construing this section, then 2123 of the Penal Code, this court said: "Section 2123 of the Penal Code provides that such information, when required in a criminal action, must be given in the presence of the county attorney and the defendant and his counsel." (And see *State* v. *Duncan,* supra.) That a violation of this section in case the defendant is in custody would be reversible error is not to be questioned. When a defendant is enjoying his liberty upon bail, it is nevertheless his duty to attend upon the court at all times during the progress of the trial, and the court can compel his attendance. Whether, if a defendant wilfully absents himself from further attendance upon the court, after the jury has retired to deliberate upon its verdict, and a situation arises such as arose in this case, he can urge error, we reserve an opinion. A similar situation is not likely to arise in this case again.

8. The defendant introduced testimony tending to show that "prior to the occasion in question" his reputation for "truth and veracity" in the community in which he lived was good, and his counsel offered an instruction on the subject. This the court refused, and it did not give any on that phase of the case. Whether the court was of the opinion that the offered instruction was not good, or that defendant was not entitled to an instruction upon the subject, the record does not disclose. Upon the evidence introduced defendant was entitled upon his request to the benefit of a proper instruction upon the subject; subject to the provisions of section 11969, Revised Codes 1921, the court is required to instruct a jury upon all matters of law necessary for its information in rendering a verdict. We think he was entitled to an instruction to this effect: You are instructed that evidence of previous good character is competent in favor of the defendant as tending to show that he would not be likely to commit the crime charged against him; and if, after a careful and thorough consideration of all the evidence in the case, including

that bearing upon his good character, you entertain a reasonable doubt of the defendant's guilt, then you must acquit him. If, however, you believe from all the evidence, beyond a reasonable doubt, that the defendant committed the crime as charged in the information, it is your duty to find him guilty, even though you may believe from the evidence that the defendant previous to the date of the offense charged has sustained a good character for veracity, or "truth and veracity," if that phrase is preferred. (See *State* v. *Jones*, 32 Mont. 442, 80 Pac. 1095; *State* v. *Cassill*, 71 Mont. 274, 229 Pac. 716; Brickwood's Sackett on Instructions, secs. 2477, 2479.)

9. There are many other assignments of error, but upon examination we find them either without merit or not prejudicial to the defendant.

The judgment is reversed and the cause is remanded to the district court of Lake county for a new trial.

ASSOCIATE JUSTICES MATTHEWS, GALEN, FORD and ANGSTMAN concur.