No. 94-116

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

       Plaintiff and Respondent,

  -vs-

WELCH E. BROGAN,

       Defendant and Appellant.

APPEAL FROM: District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable Richard G. Phillips, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Joseph B. Gary, Attorney at Law, Bozeman,
Montana

              Richard L. Kalar, Attorney at Law,
Boulder, Colorado

       For Respondent:

              Hon. Joseph P. Mazurek, Attorney General;
John Paulson, Ass't Attorney General,
Helena, Montana

**FILED**

**JUL: 2 5 1995**

Filed: *Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Submitted on Briefs: April 27, 1995

Decided: July 25, 1995

Justice Karla M. Gray delivered the Opinion of the Court.

Welsh E. Brogan (Brogan) appeals from the judgment and sentence entered by the Sixth Judicial District Court, Park County, following a jury verdict convicting him of the felony offense of possession of unlawfully taken wildlife in violation of § 87-3-118(2), MCA. We affirm.

We restate the issues on appeal as follows:

1. Did the District Court err in denying Brogan's motion for a new trial based on juror misconduct?

2. Did the District Court err in refusing to provide further instruction as requested by the jury?

3. Did the District Court err in failing to make a record of the jury's question and its response?

4. Did the District Court abuse its discretion in admitting prior acts evidence?

Did the District Court err in determining that § 87-:&8(2), MCA, is not unconstitutionally vague?

Brogan is the owner-operator of a wild game farm located in Corwin Springs, Montana. He breeds and raises elk for **commercial sale**. His operation consists of a series of penned pastures, including a 440-acre upper pasture which is secured by an electric fence.

In January 1991, officials from the Montana Department of Livestock examined Brogan's elk. They determined that the elk had been exposed to tuberculosis, quarantined his farm and forbade any movement of the elk to or from the farm.

In February 1992, investigators from the Montana Department of Fish, Wildlife and Parks (Department) placed the Brogan game farm

under surveillance in response to an anonymous tip. They determined that, at that time, Brogan's lower pasture contained 154 elk, ten animals more than his most recent official report to the Department. Two Department wardens examined the perimeter fence to the upper pasture and determined that it was completely intact; the upper pasture contained two elk. Based on the wardens' observations, as well as the discrepancy in total number of elk, the Department decided to conduct an inspection of Brogan's farm.

The inspection was held on February 18, 1992. Three wild and untagged elk were found in the upper pasture on the day of the inspection. Initially, Brogan refused to admit that there were excess elk on his farm. He later stipulated that he had excess elk and that they were wild. He claimed, however, that he had left the gate to the upper pasture open in an effort to lure the elk out.

Brogan was charged with possession of unlawfully taken wildlife, a violation of § 87-3-118(2), MCA (1991). Prior to trial, the State of Montana (State) advised that it intended to introduce Brogan's previous convictions on similar charges. The District Court denied Brogan's motion in limine which sought to exclude that evidence. The case went to trial and resulted in a hung jury and mistrial.

The State refiled its complaint. The second trial resulted in a jury verdict convicting Brogan of violating § 87-3-118(2), MCA (1991). The District Court denied Brogan's subsequent motion for a new trial.

Brogan's sentence was deferred for two years provided he

3

complies with the following conditions: (1) serve two years probation: (2) obey all laws; (3) pay $3,000 in restitution; (4) pay a $10,000 fine; (5) pay the costs of his trials in the amount of $4,358.20; and (6) forfeit his hunting, fishing and trapping privileges for three years. Brogan appeals from the judgment and from the court's denial of his motion for a new trial, which asserted each of the issues raised in this appeal.

## STANDARD OF REVIEW

Section 46-16-702(1), MCA, provides that:

(1) Following a verdict or finding of guilty, the court may grant the defendant a new trial if required in the interest of justice.

The grant or denial of a motion for a new trial is within the discretion of the trial court. State v. Gambrel (1990), 246 Mont. 84, 91, 803 P.2d 1071, 1076. Absent an abuse of discretion the court's decision will be affirmed. State v. Hatfield (Mont. 1995), 888 P.2d 899, 901, 52 St.Rep. 1, 2.

1. Did the District Court err in denying Brogan's motion for a new trial based on alleged juror misconduct?

Brogan submitted affidavits from three jurors in support of his motion for a new trial. Juror Jay O'Dell stated that, during the deliberations, one of the members of the jury "asserted that it was Mr. Brogan's legal duty pursuant to Montana law to go to the upper pasture to check after his helper reported seeing elk tracks in the pasture." The other two affidavits also state that, after he was informed about the tracks, the subject juror claimed Brogan

4

owed a duty to either check the upper pasture or have it checked, to determine if there were wild elk on his property.

Brogan argues that, based on these affidavits, one of the jurors in this case "assume[d] the role of the court by instructing other members of the jury in regard to the law of the State of Montana." The State does not dispute the information contained in the affidavits. It claims, however, that the affidavits could not be considered for the purpose of impeaching the verdict because the alleged juror's comment did not fall within one of the three exceptions to Rule 606(b), M.R.Evid. That rule generally provides that a juror may not testify as to what occurred during the jury's deliberations except when the information pertains to: (1) whether extraneous prejudicial information was improperly brought to the jury's attention; (2) whether any outside influence was brought to bear on any juror; or (3) whether any juror was induced to assent to any verdict or finding by resort to the determination of chance. Rule 606(b), M.R.Evid.

The District Court considered the affidavits to the extent necessary to determine whether they could be used to impeach the verdict and concluded that the affidavits established only that the juror had expressed his opinion about the law. The court relied on Harry v. Elderkin (1981), 196 Mont. 1, 637 P.2d 809, for the proposition that, in order to use the affidavits to impeach the verdict under Rule 606(b), M.R.Evid., there must be some outside influence more than mere misapprehension of the law. See Elderkin, 637 P.2d at 813.

In _Elderkin,_ the jury in a personal injury suit found the plaintiff 85% negligent. The plaintiff moved for a new trial, arguing juror misconduct or irregularity. The motion was denied and the plaintiff appealed. _Elderkin,_ 637 P.2d at 811-12.

The plaintiff renewed her argument regarding the jury on appeal, relying on an affidavit from the jury foreman which claimed that the jury did not understand the instructions regarding contributory negligence, comparative negligence and mitigation of damages. We pointed out that cases addressing juror affidavits fall into categories involving either external or internal influence on the jury. _Elderkin,_ 637 P.2d at 813. Where external influence is exerted or external prejudicial information is brought to the jury's attention, juror affidavits can be the basis for overturning the judgment. _Elderkin,_ 637 P.2d at 813. Examples of external influence include a juror's telephone call obtaining information with regard to previous litigation by the plaintiff, visiting the scene of an accident or bringing a newspaper article about the trial into the jury room for the jurors to see. Geiger v. Sherrodd (1993), 262 Mont. 505, 510-11, 866 P.2d 1106, 1109 (citations omitted).

Regarding internal influences, however, we have held that juror affidavits "may not be used to impeach the verdict based upon internal influences on the jury, such as a mistake of evidence or misapprehension of the law." _Elderkin,_ 637 P.2d at 813 (citations omitted). In this case, the affidavits claim that the subject juror made a comment about the law. At most, the subject juror's

6

comment was his lay opinion about the law which, under <u>Elderkin,</u> constituted **a** misstatement or misapprehension of the law. Thus, the juror affidavits relate to an internal influence on the jury.

We conclude that the juror affidavits Brogan submitted do not fall within the exceptions stated in Rule 606(b), M.R.Evid., and, therefore, that they could not be used to impeach the jury's verdict. We hold that the District Court did not abuse its discretion in denying Brogan's motion for a new trial based on the juror affidavits.

2. Did the District Court err in refusing to provide further instruction as requested by the jury?

During its deliberations, the jury submitted a question to the court regarding a game farmer's legal obligations. Neither the precise nature of the question nor the court's response was recorded; thus, neither is part of the record on appeal. Nonetheless, because the parties do not dispute the essential facts and the District Court ruled on the issue in denying Brogan's motion for a new trial, we will address the issue.

It is undisputed that the jury posed a question to the court regarding the legal obligations of a game farmer in Montana, including whether Brogan had a duty to inspect his pastures. The court declined to give further instructions and told the jury to rely on the instructions already provided. Brogan argues that the District Court's failure to provide further instruction entitles him to a new trial.

Section 46-16-503(2), MCA, provides:

> After the jury has retired for deliberation, if there is any disagreement among the jurors as to the testimony or if the jurors desire to be informed on any point of law arising in the cause, they shall notify the officer appointed to keep them together, who shall then notify the court. The information requested may be given, in the discretion of the court, after consultation with the parties.

Brogan acknowledges that the court has discretion regarding whether to provide additional instructions, but argues that the discretion is not without limits. Relying on State v. Jackson (1930), 88 Mont. 420, 293 P. 309, he asserts that the court abused its discretion in this case because the jury's question establishes that the jury was having difficulty determining Brogan's legal duties and responsibilities under the instructions given. The State relies on State v. Hawkins (1974), 165 Mont. 456, 529 P.2d 1377, in arguing that the District Court did not abuse its discretion because the question of whether Brogan owed a duty to inspect was not at issue in the case.

In Hawkins, the jury submitted four questions during the course of its deliberation. After conferring with counsel, the court responded as follows:

> The answers to your questions are contained in the instructions given. I cannot further instruct you on these matters and suggest that you refer to the written instructions on the law which you have in the jury room.

Hawkins, 529 P.2d at 1379. We concluded that "[i]f the judge is of the opinion that the instructions already given are adequate, correctly state the law, and fully advise the jury on the procedures it is to follow in its deliberation, his refusal to answer a question already answered in the instruction is not

8

error." Hawkins, 529 P.2d at 1379 (citations omitted). Hawkins is analogous to the present case. The District Court fully and correctly instructed the jury regarding Brogan's legal duties insofar as they were at issue; it had no obligation to provide additional instructions on other matters.

Jackson, on the other hand, involved a perjury prosecution in which the court gave some of the defendant's instructions and refused others. No exception was taken to any of the instructions given. After deliberating for more than three hours, the jury inquired in writing whether a conflict existed between two of the instructions. The court orally withdrew one of the instructions, over defense counsel's objection. Jackson, 293 P. at 311. On appeal, we concluded that the withdrawal of the instruction was prejudicial error because the withdrawn instruction "bore vitally upon the question of [the] defendant's . . . guilt or innocence." Jackson, 293 P. at 312.

Jackson is distinguishable from the case presently before us. Here, the court did not withdraw any instructions previously given. Moreover, no conflict existed or was asserted in the instructions given and, unlike in Jackson, the jury was fully and correctly instructed on the issues to be determined by the jury. Indeed, Brogan does not contend otherwise, arguing only that additional instruction may have cleared up some "confusion" for the jury.

We conclude that the District Court did not abuse its discretion in refusing to further instruct the jury. We hold that the court did not abuse its discretion in denying Brogan's motion

for a new trial on this basis.

3.   Did the District Court err in failing to make a record of the jury's question and its response?

With regard to the jury's question,, Brogan also contends that the court's failure to respond in writing or create a record was prejudicial error requiring a new trial.. He asserts that § 46-16-410, MCA, requires that a record be made at the settlement of instructions. While we agree with Brogan's statement regarding the statute, we disagree that the District Court settled instructions within the purview of the § 46-16-410, MCA, requirement when it advised the jury to rely on the instructions already given.

Section 46-16-410(2), MCA, provides that a record "must be made at the settlement of instructions." The term "settlement of instructions" refers to a court's consideration and selection of instructions to be given to the jury, in conjunction with counsel, prior to the jury retiring to deliberate. The record is clear that the court complied with § 46-16-410(2), MCA, in settling instructions at the close of the case. However, events surrounding the jury's question during its deliberations do not constitute the "settlement of instructions" under § 46-16-410(2), MCA. While it is the better practice to make a record of such events, the requirements of § 46-16-410(2), MCA, do not apply.

Moreover, even assuming error in the court's failure to make a record, the error would be harmless and not reversible, because Brogan has not established any prejudice affecting his substantial rights as required by § 46-20-701(2), MCA. The material facts

10

surrounding the jury's question and the court's response are not disputed and we concluded above that the court did not err in failing to further instruct the jury. Under such circumstances, no prejudice affected Brogan's substantial rights.

We conclude that the District Court did not err in failing to make a record of the jury's question and its response. Therefore, we hold that the court did not abuse its discretion in denying Brogan's motion for a new trial on this basis.

4. Did the District Court abuse its discretion in admitting prior acts evidence?

The State gave timely notice prior to both of Brogan's trials that it intended to introduce "other acts" evidence under Rule 404(b), M.R.Evid. The evidence pertained to events which took place in February of 1989 and resulted in Brogan's conviction on two counts of failing to maintain his fence to prevent entry of wild animals and one count of capturing and holding wild elk.

The District Court denied Brogan's motion in limine to exclude introduction of the evidence, provided the State's witnesses referred only to Brogan's earlier acts and not to the convictions, since the earlier case was still pending on appeal. We review a district court's ruling on evidentiary matters, including Rule 404(b), M.R.Evid., **matters,** for abuse of discretion. State v. Romero (1993), 261 Mont. 221, 224, 861 P.2d 929, 931 (citations omitted).

The admissibility of other **crimes,** wrongs, or acts is governed by Rule 404(b), M.R.Evid., which provides:

11

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, **plan,** knowledge, identity, or absence of mistake or accident.

In State v. Matt (1991), 249 Mont. 136, 814 P.2d 52, we modified the Just rule (see State v. Just (1979), 184 Mont. 262, 602 P.2d 957), identifying four factors to be considered in admitting other acts evidence. The modified Just rule requires that:

> (1) The other crimes, wrongs or acts must be similar.

> (2) The other crimes, wrongs or acts must not be remote in time.

> (3) The evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity with such character; but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

> (4) [There is a determination that the] probative value [of the evidence] is [not] substantially outweighed by the danger of . . . prejudice [to the defendant] . . . . .

Matt, 814 P.2d at 56.

Brogan's motion in limine focused on the first, second and, briefly, the third modified Just requirements. Accordingly, we will limit our review to those issues raised in the District Court. See Romero, 861 P.2d at 931.

With regard to similarity, Brogan is charged in this case with possessing unlawfully taken wildlife in violation of § 87-3-118(2), MCA. The acts upon which the charge is based are that he allegedly captured wild elk and held them on his game farm. The earlier case

12

involved charges that Brogan unlawfully captured wild elk and that he failed to maintain his game farm fences to prevent entry of wild game in violation of Department regulations. <u>See</u> State v. Brogan (1993), 261 Mont. 79, 862 P.2d 19. Brogan argues that the offenses are not similar because they were charged under different statutes and because the wild elk entered his fenced pastures under different circumstances. The differing statutes at issue have little relevance, because we are concerned with whether his prior acts are sufficiently similar to those upon which the charged violation of § 87-3-118(2), MCA, are based. Moreover, although he identifies the earlier acts as efforts to drive wild deer out and capture escaped game farm elk, our focus, again, is on the similarity of the acts rather than the reasons Brogan asserts for committing the acts.

A prior act need not be identical to the offense charged to be admissible under the first modified Just factor; "sufficient similarity" between the two is all that is required. <u>Romero</u>, 861 P.2d at 932. In <u>Romero</u>, for example, both the prior act and the crime charged involved assaults of young girls, while they slept, after the defendant had been drinking; further, on both occasions, the defendant left after the girls awakened and told him to stop. Notwithstanding the 8-year age difference between the two girls, we concluded that the prior act was sufficiently similar to the offense charged to satisfy the similarity requirement. <u>Romero</u>, 861 P.2d at 932.

Here, the offense charged is the purposeful or knowing

13

possession of unlawfully taken wild elk.  In both cases, Brogan enclosed wild elk behind electric fences and closed gates in his pastures.  We conclude that Brogan's "other acts" are sufficiently similar to satisfy the first modified Just requirement.

Regarding the remoteness factor, Brogan points out that the prior acts occurred three years before the acts underlying the offense charged in this case.  Relying on State v. Hansen (1980), 187 Mont. 91, 608 P.2d 1083, he argues that a prior act occurring more than two and one-half years before the acts at issue  in the pending charge is too remote as a matter of law to satisfy the second modified Just requirement.  Brogan misreads Hansen.

In Hansen,  we stated that a three-year interval between a prior act and the offense charged was "close to the limit of being too remote;" we noted, however,  that we had held other acts occurring more than three years prior to the crime admissible when the acts engaged in by the defendant constitute a continuing course of conduct.  Hansen, 608 P.2d 1087; citing Just, 609 P.2d at 961. We concluded that the two and one-half year lapse between the prior acts and the offense charged,  in combination with the lack of sufficient similarity between the two, rendered the prior acts too remote.  Hansen, 608 P.2d at 1087.  Hansen does not support Brogan's argument that a three-year lapse of time renders a prior act too remote as a matter of law under the modified Just rule.

We have followed the Hansen approach of considering similarity as a factor in our evaluation of remoteness in subsequent cases. In State v. McKnight (1991), 250 Mont. 457, 463, 820 P.2d 1279,

14

1283, for example, we stated that a three-year period between incidents was not too remote because the incidents in question were sufficiently similar. Specifically, we observed that:

> In addition to the three-year time span in the present case, we have considered the similarity in conduct when comparing the assaults . . . which demonstrates a pattern of similar conduct which may be properly considered on the issue of remoteness.

McKnight, 820 P.2d at 1283.

Moreover, we consistently have declined to set arbitrary time limits defining the remoteness factor. In State v. Tecca (1986), 220 Mont. 168, 172-73, 714 P.2d 136, 139, we determined that an isolated incident nine years before the charged conduct would be too remote on a stand-alone basis, but that the remoteness was alleviated by the continuing course of conduct. In State v. Ray (1994), 267 Mont. 128, 133, 882 P.2d 1013, 1016, we again declined to establish an arbitrary time limit for admitting prior acts evidence, holding only that acts occurring 16 to 18 years prior to the charged conduct were too remote, absent evidence of a continuing course of conduct, to satisfy the second modified Just requirement. Ray, 882 P.2d at 1016.

As discussed above, there is little appreciable difference between the other acts and the acts forming the basis for the offense charged in this case. Because the acts are substantially similar and occurred within three years of each other, the prior acts were not too remote to satisfy the second modified Just requirement.

Finally, Brogan makes a passing argument that the other acts

15

evidence was not admitted for one of the allowable purposes specified in the third modified Just requirement. The State's purpose in introducing the evidence was to establish absence of mistake or accident regarding Brogan's possession of unlawfully taken wildlife. Absence of mistake or accident is one of the permissible purposes for admitting other acts evidence under the third requirement of the modified Just rule. See Matt, 814 P.2d at 56. Under the circumstances of this case, the prior acts were relevant to the stated purpose for admitting the evidence.

We conclude that the District Court did not abuse its discretion in denying Brogan's motion in limine and in admitting prior acts evidence. We hold, therefore, that the court did not abuse its discretion in denying Brogan's motion for a new trial on this basis.

5. Did the District Court err in determining that § 87-3-118(2), MCA, is not unconstitutionally vague?

A defendant may challenge a statute's constitutionality by arguing that it is so vague that it is void on its face or that it is vague as applied to him. State v. Crisp (1991), 249 Mont. 199, 202, 814 P.2d 981, 983 (citation omitted). "A statute is void on its face if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." Crisp, 814 P.2d at 983 (citations omitted). "No person should be required to speculate as to whether his contemplated course of action may be subject to criminal penalties." Crisp, 814 P.2d at 983 (citation omitted).

16

Section 87-3-118(2), MCA, provides:

> A person commits the offense of possession of unlawfully taken wildlife having a value of more than $1,000 if he purposely or knowingly has actual or constructive possession of or transports or causes to be transported unlawfully taken wildlife having a value of more than $1,000. The value of the unlawfully taken wildlife must be determined from the schedule of restitution values set out in 87-1-111.

Brogan argues, in essence, that the statute is void for vagueness because it does not sufficiently define constructive possession and, therefore, does not give a reasonable person notice of what conduct is proscribed; he also asserts vagueness because no specific intent to possess unlawfully taken wildlife is required. His arguments are without merit.

We previously have rejected an argument similar to Brogan's regarding vagueness premised on the lack of a requirement of specific intent to commit an offense. In Crisp, the definition of the offense at issue required that the defendant "knowingly" engage in conduct creating a risk of death or serious bodily injury. We observed that "knowingly" is separately defined by statute and specifically included as the mental state element of the offense. Crisp, 814 P.2d at 983. We stated that "[b]y incorporating the intent element of knowingly, a mental state that is adequately defined by statute, the legislature has given fair warning of the mental state required in order to be convicted of felony criminal endangerment." Crisp, 814 P.2d at 983. On that basis, we concluded that the "use of the mental state of knowingly does not render a statute unconstitutionally vague." Crisp, 814 P.2d at 983; citing City of Billings v. Batten (1985), 218 Mont. 64, 70,

17

705 P.2d 1120, 1124

Here, the offense with which Brogan was charged requires that he "purposely or knowingly has actual or constructive possession of . . . unlawfully taken wildlife having a value of more than $1,000." Section 87-3-118(2), MCA. "Purposely" and "knowingly" are defined in subsections (58) and (33), respectively, of § 45-2-101, MCA. By incorporating these statutorily defined terms into the definition of the offense, the legislature has given fair warning of the mental state which is an element of the offense. We conclude, therefore, that § 87-3-118(2), MCA, is not unconstitutionally vague by virtue of the "purposely or knowingly" mental state element of the offense.

Crisp also disposes of Brogan's vagueness claim based on the failure of the statute under which he was charged to define the term "constructive possession." In Crisp, the defendant argued that the phrase "substantial risk of death," an element of the charged offense, failed to define the type of conduct proscribed and, therefore, did not give him fair warning that he faced criminal sanctions. We observed that, while the phrase was not statutorily defined, it was "not so arcane or obscure . . . as to give insufficient notice of the conduct prohibited . . . ." Crisp, 814 P.2d at 983-84. Relying on dictionary definitions, we concluded that "[t]he fact that the phrase is not defined in the code does not make the statute vague on its face." Crisv, 814 P.2d at 984.

Here, while the term "constructive possession" in § 87-3-

18

118(2), MCA, is not defined by statute, it has been defined by this court. "[C]onstructive possession means that the goods are not in actual, physical possession but that the person charged with possession has dominion and control over the goods." State v. Meader (1979), 184 Mont. 32, 42, 601 P.2d 386, 392. Thus, we conclude that the absence of a statutory definition for the phrase "constructive possession" does not render § 87-3-118(2), MCA, unconstitutionally vague.

Brogan has not met his burden of establishing that § 87-3-118(2), MCA, is unconstitutionally vague in failing to give fair warning that his conduct was proscribed. We conclude, therefore, that the District Court did not err in determining that the statute is not unconstitutionally vague. We hold that the court did not abuse its discretion in denying Brogan's motion for a new trial on that basis.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

19

July 25, 1995

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Joseph B. Gary
Attorney at Law
P.O. Box One
Bozeman, MT 59771-0001

Richard L. Kalar
Attorney at Law
1375 Walnut Street, Ste. 200
Boulder, CO 80302

Hon. Joseph P. Mazurek, Attorney General
John Paulson, Assistant
Justice Bldg.
Helena, MT 59620

Tara Depuy, County Attorney
P.O. Box 487
Livingston, MT 59047


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy