JUSTICE LEAPHART,
specially concurring.
Although I concur in the result reached by the Court, I do not agree with the Court’s conclusion that the juror’s statement as to her belief that Kelman owned the Playground Bar in Great Falls was an internal influence on the jury and, thus, outside the scope of Rule 606(b), M.R.Evid. Relying on State v. Brogan (1995), 272 Mont. 156, 161, 900 P.2d 284, 287, the Court takes the approach that Rule 606(b), M.R.Evid., only encompasses situations in which information is brought to the jury’s attention through external sources; e.g., telephone calls, visits to the scene of an accident or a newspaper being brought into the jury room. The Court makes the mistake of focusing on the non-jury source of the information to the exclusion of the substance of the information. Under the Court’s rationale, if a juror brought a newspaper into the jury room which had an article about Kelman’s owning the Playground Bar, that would be considered an external source and, thus, could be the subject of an affidavit under Rule 606(b), M.R.Evid. However, since that same information was brought before the jury through an oral representation by a juror, we are left powerless to take any remedial action. I disagree.
Rule 606(b), M.R.Evid., provides that a juror may testify as to what occurred during deliberations when extraneous prejudicial information is improperly brought to the jury’s attention. The focus of the rule is upon the “extraneous prejudicial” nature of the information. Application of Rule 606(b), M.R.Evid., does not hinge upon whether or not the information was introduced by a source from outside the jury room. Thus, in the present instance, the question is not how the information about the Playground Bar got to the jury but, rather, whether that information was extraneous (outside the record) and prejudicial.
In my view, when facts about a party, other than those deemed relevant and admissible at trial, are brought to the jury’s attention, those facts are extraneous. It is one thing for jurors to apply their common sense or knowledge to the facts of the case, as developed at trial. That is the very sort of internal deliberation envisioned by our system of justice. It is entirely another matter if a juror, rather than *264 merely applying his/her common sense and knowledge to the facts of the case, injects new facts about the defendant into the deliberations. In a criminal case such as this, juror reliance on anything other than facts of record violates the right of confrontation and cross-examination.
In United States v. Perkins (11th Cir. 1984), 748 F.2d 1519, the defendant was convicted of conspiracy and obstruction of justice. On appeal, Perkins alleged juror misconduct based upon the testimony of one juror to the effect that another juror was “especially committed” to a guilty verdict and that he stated he knew Perkins and had previously served on a committee with him. The Eleventh Circuit ordered a new trial finding that the juror’s conduct violated Perkins’ right under the Sixth Amendment to a jury verdict based on the evidence at trial.
Extrinsic evidence, evidence that has not been subject to the procedural safeguards of a fair trial, threatens such constitutional safeguards as the defendant’s right of confrontation, of cross-examination, and of counsel. [Citation omitted.] In addition, since such evidence has not been subject to the rules of evidence, it may confuse the jurors ....
Perkins, 748 F.2d at 1533.
The Eleventh Circuit then held that the injection of extrinsic evidence through a juror created a rebuttable presumption of prejudice that the government could overcome by demonstrating that the consideration of this evidence was harmless.
[The juror’s] remarks that he knew Perkins and/or had served on a committee with him were heard by eight of [the juror’s] eleven co-jurors. These comments were made before a jury which for many hours had remained hopelessly deadlocked, and were made by a juror who was outspoken in his belief that Perkins should be convicted. The likelihood of prejudice on a jury is obvious.
Perkins, 748 F.2d at 1534. In Perkins, the government was unable to overcome the presumption of prejudice.
United States ex rel. Owen v. McMann (2nd Cir. 1970), 435 F.2d 813, cert. denied, 402 U.S. 906, 91 S.Ct. 1373, 28 L.Ed.2d 646 (1971), was a habeas corpus proceeding in which the defendant alleged that three jurors had considered extraneous statements about him, that is, statements which were not in the record. The district court, after conducting a hearing, found:
In substance, the jurors or some of them were told by other jurors during the trial and the deliberations: that the defendant had been in trouble all his life; that he had been suspended from *265 the police force in connection with the unauthorized use of a prowl car; that he had been involved in a fight in a tavern; that one of the juror’s husband was an investigator and that he knew all about plaintiff’s background and character, which was bad; and that petitioner’s father was always getting him out of trouble.
McMann, 435 F.2d at 815.
The Second Circuit, in affirming, concluded that McMann had been denied his Sixth Amendment right of confrontation.
The invocation of the confrontation clause in Parker was entirely appropriate to shield the defendant from comments to the jury by one whose statements, if admissible at all, could have properly been received only from the witness stand, subject to the procedural safeguards which the Sixth Amendment requires. But, so far as we know, the Court has never suggested that jurors, whose duty it is to consider and discuss the factual material properly before them, become “unsworn witnesses” within the scope of the confrontation clause simply because they have considered any factual matters going beyond those of record. To resort to the metaphor that the moment a juror passes a fraction of an inch beyond the record evidence, he becomes “an unsworn witness” is to ignore centuries of history and assume an answer rather than to provide the basis for one.
Although accurate knowledge of what goes on in the jury room is unhappily limited, see Kalven and Zeisel, The American Jury vi-vii (1966), we suspect there are many cases where jurors make statements concerning the general credibility or incredibility of the police, the need of backing them up even when there is reasonable doubt of guilt or putting brakes upon them even when there is none, the desirability of overcoming reasonable doubt because of the repugnance of particular crimes or of yielding to less than reasonable doubt because of their insignificance, and concerning other matters that would invalidate a judgment if uttered by a judge, see Id. at 131-32. Yet this is the very stuff of the jury system, and we have recognized, in a not unrelated context, that the standards for judges and juries are not the same, United States v. Maybury, 274 F.2d 899, 902-903 (2 Cir. 1960). The touchstone of decision in a case such as we have here is thus not the mere fact of infiltration of some molecules of extra-record matter, with the supposed consequences that the infiltrator becomes a “witness” *266 and the confrontation clause automatically applies, but the nature of what has been infiltrated and the probability of prejudice.
McMann, 435 F.2d at 817-18. The Court, relying on the Fifth Circuit holding in United States v. McKinney (5th Cir. 1970), 429 F.2d 1019, cert. denied, 401 U.S. 922, 91 S.Ct. 910, 27 L.Ed.2d 825, concluded:
In short, the inquiry is not whether the jurors “became witnesses” in the sense that they discussed any matters not of record but whether they discussed specific extra-record facts relating to the defendant, and if they did, whether there was a significant possibility that the defendant was prejudiced thereby.
McMann, 435 F.2d at 818 n.5.
By way of further illustration, the Fifth Amendment to the United States Constitution and Article II, Sec. 25 of the Montana Constitution both protect an accused from having to testify against himself. If, despite this constitutional protection, a juror advises her fellow jurors that she heard that the defendant admitted to having committed the offense in question, that comment would be extraneous, prejudicial and a violation of the defendant’s constitutional right to remain silent.
Despite the above examples of situations in which extraneous (outside the record) and highly prejudicial material is introduced into the jury room by jurors themselves, this Court would apparently hold that these are strictly “internal” influences and, thus, beyond the reach of Rule 606(b), M.R.Evid. I cannot agree with the majority’s proposition that Rule 606(b), M.R.Evid., only encompasses prejudicial materials introduced into the jury room through non-juror sources; that it does not pertain to a juror’s reliance on personal knowledge of additional “facts” about the defendant which have not been subject to the procedural safeguards of a fair trial. To the extent that State v. Hage (1993), 258 Mont. 498, 853 P.2d 1251 or State v. Brogan (1995), 272 Mont. 156, 900 P.2d 284, express a contrary view, I would vote to overrule or limit their holdings.
In the present case, although I believe that the statement about Kelman’s ownership of a strip bar in Great Falls was extraneous and thus an “external” influence, the statement does not satisfy the other prong of the Rule 606(b)(1), M.R.Evid., test. That is, it was not prejudicial. See Lacy v. Gabriel (D. Mass. 1983), 567 F. Supp. 467, 470-71, aff’d, 732 F.2d 7 (1st Cir. 1984), cert. denied, 469 U.S. 861, 105 S.Ct. 195, 83 L.Ed.2d 128 (in habeas corpus proceeding arising out of murder conviction, where one juror had uncovered masked portions of photographs, the appellate court found that it was a *267 violation of the defendant’s right of confrontation. The error, however, was harmless where other evidence of the defendant’s guilt was copious). The issue at hand was not whether Kelman was engaged in unsavory business ventures but whether he had tampered with public records. The alleged ownership of the Playground Bar was not relevant to any of the elements of the crime charged and, therefore, the juror’s statement had no bearing on a material fact in the case. Accordingly, despite the Court’s misreading of Rule 606(b), M.R.Evid., I concur with the result.